**NOT FOR PUBLICATION**                                                                                      **CLOSED**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JIELING ZHONG, ZI SHANG ZHENG, | : |
| | : Honorable Faith S. Hochberg |
| Plaintiffs, | : |
| | : Civil Action No. 08-4597 |
| v. | : |
| | : |
| PAUL NOVAK, *et al.*, | : **OPINION & ORDER** |
| | : |
| Defendants. | : Dated: August 18, 2010 |

**HOCHBERG, District Judge:**

      This matter concerns the interpretation of a provision of the Child Status Protection Act, Pub. L. No. 107-208, 116 Stat. 927 (2002), that provides for the conversion of an aged-out alien's visa petition to an appropriate preference category and the retention of the priority date assigned to the original petition. Plaintiffs Jieling Zhong ("Ms. Zhong") and her adult son Zi Shang Zheng ("Mr. Zheng") allege that the U.S. Citizenship and Immigration Service ("USCIS") assigned the wrong priority date to the visa petition Ms. Zhong filed on behalf of Mr. Zheng. Citing the Child Status Protection Act, they argue that Mr. Zheng's visa petition should retain the priority date from an earlier petition filed on behalf of Ms. Zhong, on which Mr. Zheng was listed as a derivative beneficiary.

      The Board of Immigration Appeals (the "BIA" or "Board") recently issued a published decision addressing a substantially similar argument on similar facts. In *Matter of Wang*, 25 I. & N. Dec. 28 (B.I.A. 2009), the BIA held that "[t]he automatic conversion and priority date

1

retention provisions of the Child Status Protection Act . . . do not apply to an alien who ages out of eligibility for an immigrant visa as the derivative beneficiary of fourth-preference visa petition, and on whose behalf a second-preference petition is later filed by a different petitioner." *Id.* at 28.  Thus, the issue for this Court is whether it should give deference to the Board's interpretation of the Child Status Protection Act as articulated in *Wang* under the two-step framework set forth in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

To decide this issue, the Court will begin with a review of the statutory and regulatory framework for family-sponsored immigration petitions, the facts of the instant case, and the Board's decision in *Wang*.

## I.  BACKGROUND

### A.  Family-Sponsored Visas

United States citizens and lawful permanent residents may file with USCIS visa petitions ("Form I-130s") on behalf of certain relatives to obtain them permission to enter the United States.  *See* 8 U.S.C. §§ 1153(a), 1154(a)(1)(A)(i), (a)(1)(B)(i).  After a citizen or legal permanent resident "petitioner" has filed a Form I-130 on behalf of an alien relative "beneficiary," USCIS will "approve" the petition after verifying that the claimed familial relationship exists.  *Drax v. Reno*, 338 F.3d 98, 114 (2d Cir. 2003).  An approved petition does not grant the beneficiary a visa; rather, it results in the beneficiary being classified as a family member eligible to receive permission to enter the country pursuant to further rules governing family-sponsored visas.  *Bolvito v. Mukasey*, 527 F.3d 428, 430 n.4 (5th Cir. 2008).

An approved petition carries with it both a "preference category" and a "priority date."

*Drax*, 338 F.3d at 114.  Congress has established four family preference categories:  First preference is given to unmarried adult sons and daughters of U.S. citizens ("F1"); second preference to spouses and minor children ("F2A"), and unmarried adult sons and daughters ("F2B") of permanent resident aliens; third preference to married sons and daughters of U.S. citizens ("F3"); and fourth preference to brothers and sisters of U.S. citizens ("F4").  8 U.S.C. § 1153(a).

Congress has limited the number of visas available within each preference category, and further limits availability based on the beneficiary's country of origin.  *See* 8 U.S.C. §1153(a); *see also Bolvito*, 527 F.3d at 429-32 (explaining the family preference categories and numerical limitations).  When a category is oversubscribed, "immigrant visas are issued on a first-come-first-served basis" until the numerical limit for the category is reached.  *Kooritzky v. Reich*, 17 F.3d 1509, 1511 (D.C. Cir. 1994).  According to the U.S. Department of State, the number of applications each year for visas for alien beneficiaries from China, like Plaintiffs here, far exceeds the numerical limitations for each family preference category.  Thus, even though USCIS approves a petitioner's Form I-130, the Chinese beneficiary must nonetheless wait to be issued a visa and enter the United States.

A beneficiary's place in the resulting waiting line for a visa is determined by his or her "priority date;" that is, the date on which the approved petition was filed.  8 C.F.R. § 204.1(c); *Bolvito*, 527 F.3d at 430.  Visas cannot be issued until the applicant's priority date is reached.  The earlier a beneficiary's priority date, the longer he has waited and the closer he is to the front of the visa line.  In many cases, there may be a waiting period of several years before an

applicant's priority date is reached.

Under this framework, an issue arises when the child[1] of a beneficiary faces possible separation from his parent when USCIS grants the parent a visa. To avoid separating the child from his parent upon the parent's entry to the United States, Congress gives the child "the same status" and "the same order of consideration" as his parent. 8 U.S.C. § 1153(d).[2] This permits the child to accompany his parent to the United States. The "derivative classification" of the child attaches immediately upon approval of the parent's classification and requires no separate visa petition.

This classification remains so long as the required relationship is maintained; that is, so long as the derivative beneficiary maintains his status as a child. *See id.; Li v. Renaud*, --- F. Supp. 2d ----, 2010 WL 1779922, at *3 (S.D.N.Y. Apr. 27, 2010). However, while a parent waits for a visa to become available, her child might "age out" by turning twenty-one years old, and thus no longer qualify as a child entitled to accompany his parent under the statute. *See Bolvito*, 527 F.3d at 436 ("a qualifying familial relationship that is terminated due to . . . 'aging out' . . . no longer entitles the [derivative beneficiary] to accompany[] or follow[]" the primary beneficiary to the United States") (quoting 3 Immigration Law & Procedure § 37.05[2][a], 37-16). When this happens, the aged out child moves to a lower preference category, and is placed

---

[1]  A "child" is defined for immigration purposes as an unmarried individual under the age of twenty-one. 8 U.S.C. § 1101(b)(1).

[2]  A child benefitted under this statute is called a "derivative beneficiary;" the parent is referred to as the "primary beneficiary."

at the end of that category's waiting line for a visa.[3]  *See* H.R. Rep. No. 107-45, at 2 (2001).  Mr. Zheng, a Plaintiff here, is such an aged out child.

**B. Facts Of The Instant Case**

The facts of the instant case are not in dispute.

Ms. Zhong is a citizen of the People's Republic of China.  Her son, Mr. Zheng, was born on December 8, 1983 in the People's Republic of China.  Ms. Zhong's mother, Hui Zhen Wu ("Ms. Wu"), was a legal permanent resident of the United States.

In October 1997, Ms. Wu filed a Form I-130 petition requesting that Ms. Zhong be approved for a visa (hereinafter the "1997 Petition").  This Petition sought to classify Ms. Zhong in the F2B category as the unmarried adult daughter of a legal permanent resident.  USCIS gave the 1997 Petition a priority date of October 28, 1997.

The 1997 Petition was approved on February 18, 1998.  At the time, Mr. Zheng was fourteen years old and qualified for derivative status as the child of Ms. Zhong, the primary beneficiary.[4]  As a derivative beneficiary of the 1997 Petition, Mr. Zheng was subject to Ms. Zhong's priority date.  If a visa had been available at that time, Mr. Zheng could have immigrated to the United States with Ms. Zhong because he was still a child.  However, a visa was not immediately available to Ms. Zhong because of the significant waiting line for those in the F2B

---

[3]  For example, upon turning twenty-one, beneficiaries in the F2A category for minor children shift to the F2B category for unmarried adult sons and daughters of legal permanent residents.

[4]  Ms. Wu could not have listed Mr. Zheng as a primary beneficiary on the 1997 Petition because Congress has not legislated a family preference category for grandchildren of lawful permanent residents.

category.

Approximately ten years later, in June 2007, a visa became available to Ms. Zhong. By that time, Mr. Zheng was twenty-three years old, and no longer qualified as a child who could derive derivative beneficiary status from the 1997 Petition. Rather, he had "aged-out," and therefore was not authorized to immigrate to the United States with his mother. Ms. Zhong immigrated without Mr. Zheng, and thereafter applied for permanent residency.

On November 11, 2007, USCIS granted Ms. Zhong status as a lawful permanent resident of the United States. In April 2008, Ms. Zhong filed a Form I-130 petition on behalf of Mr. Zheng as primary beneficiary (hereinafter the "2008 Petition"). The 2008 Petition sought a category F2B visa for Mr. Zheng as the unmarried adult son of a lawful permanent resident.

Accompanying the 2008 Petition was a letter from Plaintiffs' counsel requesting that USCIS apply the priority date of the 1997 Petition to the 2008 Petition. If this date were assigned, Mr. Zheng would have been immediately eligible for an immigrant visa. But, USCIS declined to do so, and gave the 2008 Petition a priority date of April 17, 2008. As a result, Mr. Zheng must wait until this priority date is reached before he can immigrate and join his family.

Ms. Zhong and Mr. Zheng initiated this action on September 12, 2008. They claim that under the Child Status Protection Act (the "CSPA"), Mr. Zheng's 2008 Petition should be assigned the priority date of Ms. Zhong's 1997 Petition, and seek declaratory and injunctive relief to that effect.

**C. The Child Status Protection Act**

Over a decade ago, "an enormous backlog of adjustment of status (to permanent residence

applications) . . . developed at [USCIS]." H.R. Rep. No. 107-45, at 2 (2001). As a result, child beneficiaries of visa applications would frequently age out before the parents' applications were processed. *Id.* The CSPA was enacted to address this issue of children losing their eligibility for visas because they aged out as a result of administrative delays in visa processing.

Among other things, the CSPA amended Section 203 of the Immigration and Nationality Act ("INA") by adding what is now subsection (h). Section 203(h)(1) sets forth a formula for determining whether a son or daughter qualifies as a "child" under the INA. The formula subtracts the time the visa petition was pending from the age of the son or daughter on the date the visa became available. 8 U.S.C. § 1153(h)(1). If the age is calculated to be under twenty-one, the son or daughter is considered a "child." If the age is determined to be twenty-one years or older, Section 203(h)(3) provides for the automatic conversion of the petition to the appropriate preference category and the retention of the original priority date. Section 203(h)(3) states in full:

> If the age of an alien is determined under paragraph (1) to be 21 years of age or older for the purposes of subsections (a)(2)(A) and (d) of this section,[5] the alien's petition shall automatically be converted to the appropriate category and the alien shall retain the original priority date issued upon receipt of the original petition.

8 U.S.C. § 1153(h)(3). Section 203(h)(3) is central to the controversy here. Plaintiffs maintain that this provision directs that the 2008 Petition on behalf of Mr. Zheng must be "converted" from the 1997 Petition and "retain" its priority date. The Board of Immigration Appeals recently addressed a similar argument on similar facts and squarely interpreted Section 203(h)(3) in its

---

[5] Subsection (a)(2)(A) provides the statutory authority to issue visas to children of lawful permanent residents. 8 U.S.C. § 1153(a)(2)(A). Subsection (d) provides the statutory authority to issue a visa to a derivative beneficiary to immigrate with the principal beneficiary. 8 U.S.C. § 1153(d).

published decision in *Wang*.

**D.  The BIA's Decision In *Wang***

In *Wang*, a United States citizen petitioned for her brother ("Wang") to be approved for a F4 visa.  Wang's children were listed as derivative beneficiaries on the petition.  By the time a visa became available to Wang, one of his children ("Daughter") had turned 21 and thus no longer qualified as a "child" who could derive beneficiary status from the petition.  Wang then filed a separate petition on behalf of Daughter to classify her for a F2B visa.  In the petition, Wang requested that the priority date from the original F4 petition filed by his sister be applied to the F2B petition he filed for Daughter.  He urged that the F4 petition should "automatically convert" into the F2B petition and retain the priority date of the former pursuant to Section 203(h)(3).  The BIA was thus presented with the issue of "whether a derivative beneficiary who has aged out of a fourth-preference visa petition may automatically convert her status to that of a beneficiary of a second-preference category pursuant to section 203(h)." *Wang*, 25 I. & N. Dec. at 30.  To resolve this issue, the BIA analyzed the automatic conversion and priority date retention provisions of Section 203(h)(3).

The BIA began its analysis by noting that Section 203(h)(3) "does not expressly state which petitions qualify for automatic conversion and retention of priority dates." *Id.* at 33.  To clarify this ambiguity, the BIA turned to the regulatory and statutory context in which Congress enacted Section 203(h)(3), as well as the statute's legislative history.

The BIA first observed that the terms "automatic conversion" and "retention" have "recognized meanings" in the immigration regulations.  The BIA noted, for example, that 8 C.F.R. § 204.2(i) provides for the "automatic conversion" from one preference category to

8

another upon the occurrence of certain events, such as changes in the beneficiary's marital status or the naturalization of the petitioner. *Id.* at 34 (citing Automatic Conversion of Classification of Beneficiary, 52 Fed. Reg. 33,797 (Sept. 8, 1987)).[6] Similarly, Section 201(f) of the INA, which was added by the CSPA, expressly authorizes "automatic conversion" of certain petitions from one preference category to another by operation of law.[7] *Id.* at 35. The Board noted that these petitions converted without the petitioner or a government official taking any action. *Id.*

The BIA further observed that 8 C.F.R. § 204.2(a)(4) explicitly provides for the "retention" of a priority date for "an aged-out child who was accompanying or following to join a principal beneficiary on a second-preference spousal petition." *Id.* at 34. Under that regulation, if a child ages out prior to the issuance of a visa to the parent, a separate petition for that son or daughter is required, but, by the express language of the regulation, the original priority date is retained "if the subsequent petition is filed by the same petitioner." *Id.*

In light of this historical usage, the BIA determined that "conversion" means to automatically shift from one visa category to another "without the need to file a new visa petition," and that "retention" of priority dates is "limited to visa petitions filed by the same family member. A visa petition filed by another family member receives its own priority date." *Id.* at 35. The Board presumed that Congress enacted the language in Section 203(h)(3) with an understanding of these meanings. *Id.* at 35.

---

[6]   For example, if the petitioner becomes a U.S. citizen, the F2B petition filed on behalf of petitioner's son or daughter would automatically convert to a F1 petition. *Wang*, 25 I. & N. Dec. at 34.

[7]   For example, if a petitioner sought a visa on behalf of a married daughter, but that daughter got divorced, the daughter's classification would automatically convert to the more favorable "unmarried son or daughter" category. *See* 8 U.S.C. § 1151(f)(3).

With these meanings in mind, the BIA applied Section 203(h)(3) to the Daughter in *Wang*, and determined that she could not benefit from its "automatic conversion" and "retention of priority date" concepts:

> First, with regard to the "automatic conversion" referenced in section 203(h)(3), we look to see which category the fourth-preference petition converted at the moment [Daughter] aged out. When [Daughter] aged out from her status as a derivative beneficiary on a fourth-preference petition, there was no other category to which her visa could convert because no category exists for the niece of a United States citizen. Second, if we apply the "retention" language of section 203(h) here, we look to see if the new petition was filed on the beneficiary's behalf by the same petitioner. In [Daughter's] case, the new visa petition has been filed by her father, not by her aunt (who was the original petitioner).

*Id.* The Board therefore found no basis for retaining the earlier priority date.

Petitioners in *Wang* argued that this result would be contrary to the CSPA's intent as an ameliorative provision aimed at keeping families together; they urged that this purpose was served by permitting all aged-out derivative beneficiaries to retain the priority dates of their alien parents' visa petitions. The Board found no clear indication in the statute that Congress intended to expand the automatic conversion and priority date retention concepts in such a way. It therefore turned to the legislative history of the CSPA for guidance.

There, the BIA found that the drive for the legislation was extensive administrative delays in visa processing, resulting in the age-out of beneficiaries and loss of child status. *Id.* at 36-37. The BIA also found "repeated discussion in the House . . . of the intention to allow for retention of child status 'without displacing others who have been waiting patiently in other visa categories.'" *Id.* at 37 (citing the Congressional Record). The Board thus concluded that Congress did not intend "to create a mechanism to avoid the natural consequence of a child aging

10

out of a visa category because of the length of the visa line." *Id.* at 38.[8] In other words, the CSPA was not intended to address aging out as a result of delays caused by the high demand for a finite number of visas. To hold otherwise and allow the retention of priority dates, the Board reasoned, would allow former derivative beneficiaries to cut ahead of other aliens in the visa line, a result contrary to Congressional intent. *Id.*

Based on this analysis, the Board held that the automatic conversion and priority date retention provisions of Section 203(h)(3) did not apply to an alien who aged-out of eligibility as a derivative beneficiary of an F4 petition, and on whose behalf an F2B petition is later filed by a different petitioner. *Id.* at 38-39.[9]

With this background, the Court now turns to the parties' cross-motions for summary judgment.

## II. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, supporting papers, affidavits, and admissions on file demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp.*

---

[8] *See also Wang*, 25 I. & N. at 38 ("While the CSPA was enacted to alleviate the consequences of administrative delays, there is no clear evidence that it was intended to address delays resulting from visa allocation issues, such as the long wait associated with priority dates.").

[9] Petitioner filed a motion for reconsideration of the Board's decision in *Wang*. On May 21, 2010, the Board denied the motion, concluding that Petitioner had not established that a previously-raised issue was overlooked, that new law affects the determination, or that a previously-unbriefed issue required additional consideration. Rather, the Board found that much of Petitioner's motion was substantially similar to the brief initially considered. *Matter of Wang*, slip op. at 1 (B.I.A. May 21, 2010) (hereinafter "*Wang II*").

*v. Catrett*, 477 U.S. 317, 322 (1986). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).

As noted above, there are no factual disputes here; the dispute between the parties is purely a legal one: whether USCIS's decision not to apply Section 203(h)(3)'s automatic conversion and priority date retention provisions to Mr. Zheng's visa petition was proper. Under the Administrative Procedure Act, a final agency action can be set aside only if it "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

When presented with a question implicating a federal agency's interpretation and application of a statute that it administers, the reviewing Court employs the two-step framework established in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). First, the Court assesses whether the statute at issue is ambiguous.[10] That is, the Court must determine "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must

---

[10]  Whether a statute is ambiguous is determined by looking at the language of the statute itself, the specific context in which it is used, and the broader context of the statute as a whole. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

give effect to the unambiguously expressed intent of Congress." *Id.* at 843-44.  If, however, the statute is ambiguous, the Court must proceed to *Chevron*'s second step.

At step two, the Court must determine whether to defer to the agency's interpretation of the ambiguous statute.  *See id.* at 843.  Under *Chevron*, the Court must defer to the agency's interpretation "if it is based on a permissible construction of the statute."  *Id.*  A court should not disturb an agency's interpretation "unless it appears from the statute or its legislative history that the [interpretation] is not one that Congress would have sanctioned." *United States v. Shimer*, 367 U.S. 374, 383 (1961); *see also Chevron*, 467 U.S. at 844 ("a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency").  Courts accord this deference because they "presum[e] that Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley v. Citibank (South Dakota), N.A.*, 517 U.S. 735, 740-41 (1996).

Here, the parties agree that USCIS's interpretation of Section 203(h)(3) is embodied in the BIA's decision in *Wang*, but disagree over whether *Wang* is entitled to *Chevron* deference.[11]

---

[11]  It is well settled that a decision of the BIA that interprets an ambiguous provision of the INA is entitled to deference under *Chevron*.  *See, e.g.*, *INS v. Aguirre-Aguirre*, 526 U.S. 425, 425 (1999) ("the BIA should be accorded *Chevron* deference as it gives ambiguous statutory terms concrete meaning through a process of case-by-case adjudication") (internal quotations omitted); *Silva-Rengifo v. Attorney General*, 473 F.3d 58, 63 (3d Cir. 2007) (courts "defer to the BIA's reasonable interpretations of statutes it is charged with administering"); *Yuen Jin v. Mukasey*, 538 F.3d 143, 150 (2d Cir. 2008) ("Precedential BIA decisions . . . are eligible for *Chevron* deference insofar as they represent the agency's authoritative interpretations of statutes.").

13

## III.  DISCUSSION[12]

### A.  *Chevron* Deference

Having considered the arguments of the parties on the papers pursuant to Federal Rule of Civil Procedure 78, the Court finds that the BIA's interpretation of Section 203(h)(3) in *Wang* is entitled to *Chevron* deference.  First, the Court finds that Section 203(h)(3) is ambiguous at *Chevron* step one.  The statute is ambiguous because it only vaguely refers to "petitions" that qualify for conversion and priority date retention, without expressly specifying *which* petitions qualify for this favorable treatment.  *Accord Zhang v. Napolitano*, 663 F. Supp. 2d 913, 920 (C.D. Cal. 2009) (finding that Section 203(h)(3) is ambiguous); *Li*, 2010 WL 1779922, at *7 (same); *Co v. USCIS*, Civ. No. 09-776, 2010 WL 1742538, at *3-4 (D. Or. Apr. 23, 2010) (same).

At *Chevron* step two, the Court finds that the BIA's interpretation of Section 203(h)(3) in *Wang* was a reasonable one, well supported by the regulatory and statutory context in which the CSPA was enacted.  *Accord Zhang*, 663 F. Supp. 2d at 920-21.  In its decision, the BIA thoroughly examined the historical usage of the terms "conversion" and "retention" and observed that they had recognized meanings in the immigration regulations.  By reviewing other

---

[12]  As an initial matter, although not raised by the parties, the Court notes that Mr. Zheng likely does not have standing to challenge USCIS's decision regarding the 2008 Petition's priority date.  Courts have found that "[a] District Court action for judicial review of an administrative decision concerning a Form I-130 Petition may be brought only by the Petitioner . . . not by the Beneficiary."  *Li*, 2010 WL 1779922, at *7 n.3; *see also Liao v. Holder*, 691 F. Supp. 2d 344, 350-51 (E.D.N.Y. 2010) (noting that the "regulations plainly provide that 'the person or entity with legal standing in a proceeding . . . does not include the beneficiary of the visa petition'") (quoting 8 C.F.R. § 103.3(a)(iii)(B)).  The Court will nonetheless review Plaintiffs' arguments on the merits on behalf of Ms. Zhong, who, as the petitioner, has standing to challenge USCIS's decision.

provisions of the immigration regulations to aid its interpretation, the BIA employed approved methods of statutory construction. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995) ("[T]he normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning.").

The BIA then reviewed the CSPA's legislative history for evidence of a clear intent by Congress to expand these recognized meanings "to create an open-ended grandfathering of priority dates that [would] allow derivative beneficiaries to retain an earlier priority date set in the context of a different relationship, to be used at any time." *Wang*, 25 I. & N. at 39. The Board found no such intent; rather, it identified Congress's concern for allowing retention of child status "without displacing others who have been waiting patiently in other visa categories." *Id.* at 37. In light of this context, the BIA had ample support for its conclusion that the conversion and priority date retention provisions of Section 203(h)(3) did not apply to an alien who aged out of eligibility for an immigrant visa as the derivative beneficiary of a F4 visa petition, and on whose behalf a F2B petition was later filed by a different petitioner. *Id.* at 38-39.

Plaintiffs contend that the Board's interpretation of Section 203(h)(3) is unreasonable because it overlooks the inclusion of the language "for the purposes . . . [subsection] (d);"[13] that subsection provides the authority to issue a visa to a derivative beneficiary to immigrate with the principal beneficiary. Plaintiffs' reading of this language is over-broad. In its consideration of the statutory language, the Board rejected Plaintiffs' contention that *all* derivative beneficiaries

---

[13] As a reminder, Section 203(h)(3) states: "If the age of an alien is determined under paragraph (1) to be 21 years of age or older *for purposes of subsections (a)(2)(A) and (d)* of this section, the alien's petition shall automatically be converted to the appropriate age category and the alien shall retain the original priority date issued upon receipt of the original petition." (emphasis added).

15

eligible for visas under subsection (d) must benefit under the CSPA. *See Wang*, 25 I. & N. Dec. at 35 (finding no indication in the statute that Congress intended to allow derivative beneficiaries to "never age out or lose a previous priority date"). Instead, the BIA restricted subsection (d) to beneficiaries of derivative F2A petitions based on the historical meanings of "conversion" and "retention" of priority dates. That these derivative beneficiaries can benefit demonstrates that the reference to subsection (d) was considered, not overlooked. *Accord Zhang*, 663 F. Supp. 2d at 921. Moreover, in light of the BIA's reliance on Congress's intent not to expand the protections of the CSPA, the Court cannot say that this interpretation, which restricts subsection (d) to beneficiaries of derivative F2A petitions, is unreasonable. *Id.*

Plaintiffs further argue that the Board's decision overlooked various other regulatory and statutory provisions permitting automatic conversion or retention of priority dates. Pl. Opp. 13-15 (citing 8 C.F.R. § 204.5(e); The Patriot Act, P.L. 107-56, 115 Stat. 272 (2001); 8 C.F.R. § 204.12(f)(1); 8 C.F.R. § 204.2(h)(2)). However, the cited examples are entitled to less weight because they do not relate to family-preference visas, as the regulations cited in *Wang* do. The rationales behind these other regulations are significantly different than the intent underlying the family-based visa petition framework, and reflect different policy choices.[14] Morever, none use the terms "automatic conversion" and "retention" in conjunction, or allow for automatic conversion with retention of priority dates where different petitioners have filed multiple visa

---

[14]   For example, the basis for employment visas is the United States' need for particular skills. *See* 8 U.S.C. § 1153(b). Based on this national need, Congress has decided that an alien beneficiary may change employers, but retain the priority date from the visa petition filed by their previous employer. *See* 8 C.F.R. § 204.5(e). Plaintiffs also cite 8 C.F.R. § 204.2(h)(2), which allows an alien beneficiary who has been physically abused by her petitioner to file a second, self-petition without losing the earlier priority date. Congress was evidently concerned about the victim beneficiary continuing her relationship with the abusive petitioner for visa purposes.

forms.  *Accord Zhang*, 663 F. Supp. 2d at 921; *Wang II*, slip op. at 3-4.

Plaintiffs' argument that the Board's decision is contrary to the intent underlying the CSPA is also unavailing.  Citing *Padash v. INS*, 358 F.3d 1161, 1168-74 (9th Cir. 2004), Plaintiffs contend that Congress intended that the CSPA be construed broadly so as "to provide expansive relief to children" who "through no fault of their own, lose the opportunity to obtain [a] . . . visa" when turning twenty-one.  Pl. Opp. 10.  However, there is no indication in the legislative history that the CSPA was intended to provide relief to *all* children who age-out.  The Court in *Padash*, like the Board in *Wang*, found that Congress's intent in enacting the CSPA was only to cure age-outs that occur as a result of administrative delay in visa petition processing.  *See Padash*, 358 F.3d at 1174 (describing Congress's "one goal" as "to override the arbitrariness of statutory age-out provisions that resulted . . . because of administrative delays"); *Wang*, 25  I. & N. Dec. at 37-38 (same).  Mr. Zheng, like the Daughter in *Wang*, has faced delay caused by the high demand for visas, rather than administrative delay.  Plaintiffs have pointed to no clear evidence that the CSPA was intended to address delays associated with visa allocation issues.  *See id.* (finding no such intent).  Such a result would be inconsistent with Congress's simultaneous concern with not "displacing others who have been waiting patiently in other visa categories."  *Id*. at 37 (citing the Congressional Record).

Finally, the Court disagrees with Plaintiffs' contention that the BIA erred because it failed it follow its earlier, unpublished decision in *Matter of Garcia*, 2006 WL 2183654 (B.I.A. 2006).  An unpublished BIA decision such as *Garcia*, unlike the published decision in *Wang*, has no precedential value and is therefore not binding.  *See* 8 C.F.R. 1003.1(g) (providing for designation of certain decisions as precedent); *see also Rotimi v. Gonzales*, 473 F.3d 55, 57-58

(2d Cir. 2007) (noting that non-precedential BIA decisions are generally not accorded *Chevron* deference). Moreover, in declining to follow the reasoning in *Garcia*, the Board in *Wang* emphasized that *Garcia* did not address the legislative framework of the CSPA or fully develop the arguments raised and considered throughout the balance of the *Wang* decision. *Wang*, 25 I. & N. Dec. at 33 n.7; *Wang II*, slip op. at 2. The BIA was therefore reasonable in declining to adhere to its earlier unpublished decision in *Garcia*. *Accord Li*, 2010 WL 1779922, at *11.

In sum, the Court finds that the BIA's interpretation of Section 203(h)(3) embodied in *Wang* is reasonable and entitled to *Chevron* deference.

**B. Mr. Zheng's Visa Petition**

Turning to the instant case, under *Wang*, USCIS properly found that Mr. Zheng is not entitled to the 1997 Petition's priority date, as Plaintiffs requested. First, with regard to automatic conversion, when Mr. Zheng turned twenty-one, he aged out of his status as a derivative beneficiary of the 1997 Petition filed on behalf of his mother. There was no category to which this visa could convert, because there is no preference category for the grandson of a lawful permanent resident, and Ms. Zhong was not yet a legal resident. Accordingly, Mr. Zheng could not benefit from automatic conversion. Second, with regard to the retention of priority dates, the 2008 Petition was filed by Ms. Zhong, not by Ms. Wu, who was the petitioner on the 1997 Petition. Because the Petitions were not filed by the same petitioner, Mr. Zheng could not retain the priority date from the 1997 Petition. Additionally, the approximately ten year delay in USCIS's issuance of a visa to Mr. Zheng's mother is not the type of delay that Congress intended to address in enacting the CSPA. As in *Wang*, the delay was caused by the demand for visas exceeding the numerical limits set by Congress, not by the agency's failure to promptly process

the 1997 Petition.  Therefore, following the reasoning of *Wang*, USCIS did not act arbitrarily or capriciously in refusing to apply the priority date of the 1997 Petition to the 2008 Petition.

## IV.  ORDER

For the foregoing reasons, it is hereby

**ORDERED** that the Government's motion for summary judgment [Docket #13] is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' cross-motion for summary judgment [Docket #19] is **DENIED**; and it is further

**ORDERED** that this case is **CLOSED**.

                                                      /s/ **Faith S. Hochberg**
                                                    Hon. Faith S. Hochberg, U.S.D.J.